**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: KWOK, *Debtors* | BANKR. NO. 22-50073 (JAM) *Chapter 11* |
| HUDSON DIAMOND NY LLC, HUDSON DIAMOND HOLDING LLC, LEADING SHINE NY LTD., and MEI GUO, *Appellants*, | ADV. PRO. NO. 23-5023<br>CIVIL NO. 3:25-CV-1131 (KAD) |
| v. | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE, *Trustee-Appellee*. | AUGUST 25, 2026 |

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge:

Appellants Hudson Diamond NY LLC ("HDNY"), Hudson Diamond Holding LLC ("HDH") (together, with HDNY, the "HD Parties"), Leading Shine NY Ltd. ("Leading Shine"), and Mei Guo[1] challenge the Bankruptcy Court's decision awarding summary judgment to Chapter 11 Trustee Luc A. Despins ("Trustee" or "Appellee") on the Third, Fourth, Fifth, and Sixth Claims asserted by the Trustee in the adversary proceeding underlying this appeal, in which the Bankruptcy Court determined: (a) that HDNY and Leading Shine are alter egos of the Individual Debtor Ho Wan Kwok (the "Debtor" or "Kwok"), and that any and all of their assets shall be turned over to the Trustee; and (b) that the Debtor equitably owns HDNY and Leading Shine, as well as all of their bank, financial, and/or securities accounts, and that such accounts and any membership interests held in HDNY and Leading Shine shall be turned over and/or surrendered

[1] Mei Guo is the Debtor Ho Wan Kwok's daughter.

to the Trustee. *See Despins v. Lamp Capital LLC, et al.*, No. 23-AP-5023 (JAM) (Bankr. D. Conn.), ECF Nos. 136, 138 (collectively, the "MSJ Decision"). For the reasons set forth below, the Judgment of the Bankruptcy Court is **AFFIRMED**.

**Procedural History**

The Adversary Proceeding

On October 26, 2023, the Trustee commenced the underlying Adversary Proceeding seeking, as relevant here: (1) a declaratory judgment that HDNY is the Debtor's alter ego, and ordering turnover of all of HDNY's assets (the "Third Claim"); (2) a declaratory judgment that the Debtor beneficially owned HDNY and/or its assets, and ordering turnover of all of HDNY's assets, as well as HDH's ownership interest in HDNY (the "Fourth Claim"); (3) a declaratory judgment that Leading Shine is the Debtor's alter ego, and ordering turnover of all of Leading Shine's assets (the "Fifth Claim"); and (4) a declaratory judgment that the Debtor beneficially owned Leading Shine and/or its assets, and ordering turnover of all of Leading Shine's assets, as well as Mei Guo's ownership interest in Leading Shine (the "Sixth Claim").[2] *See* Complaint, Adv. Proc., ECF No. 1. Though the Trustee's claims arise under New York and Delaware law, the Adversary Proceeding sought declaratory relief pursuant to Sections 541, 542, and 544 of the Bankruptcy Code. *See generally id.* In support of its claims, the Trustee asserted, as to HDNY, *inter alia*, that:

> a. HDNY was formed by the Debtor through one of his attorneys, and was managed by the Debtor through his agents, including Yvette Wang, Max Krasner, and Daniel Podhaskie;
> b. HDNY was funded entirely by the Debtor through entities he controlled, had no business purpose other than to hold the Debtor's property and/or pay his expenses, and indeed, was used by the Debtor to fund real estate transactions and transfer millions of dollars to his other shell companies, as well as to transfer funds to his daughter, Mei Guo, and his wife, Hing Chi Ngok;

[2] The Bankruptcy Court has previously entered judgment on the Trustee's First and Second Claims, against Lamp Capital LLC, and Infinity Treasury Management Inc. *See* Adv. Proc., ECF Nos. 63, 66.

c. HDNY used the same address as numerous of the Debtor's other shell companies, as well as the Debtor himself, and one of his attorneys; and
d. The Debtor invoked the Fifth Amendment when questioned regarding his control over HDNY and HDH.

*See id.* at 14–21.

And as to Leading Shine, the Trustee asserted, *inter alia*, that:

a. Leading Shine was managed by the Debtor through the Debtor's agents;
b. Leading Shine used the same address as numerous of the Debtor's other shell companies, as well as the Debtor himself, and one of his attorneys;
c. Leading Shine was actively involved in the movement of money to the Debtor's other shell companies;
d. Leading Shine was funded entirely through the Debtor and entities in his control, and its only documented activities consisted of receiving and holding the Debtor's assets, and paying his expenses; and
e. The Debtor invoked the Fifth Amendment on multiple occasions when questioned regarding his control over Leading Shine.

*Id.* at 21–25.

On September 19, 2024, the Trustee filed a Motion for Summary Judgment as to his Third, Fourth, Fifth, and Sixth Claims. MSJ, Adv. Proc., ECF No. 97. On October 23, 2024, Appellants jointly filed an opposition to the Motion for Summary Judgment. MSJ Opp., Adv. Proc., ECF No. 112, 116. On November 6, 2024, the Trustee filed a reply in further support of his Motion for Summary Judgment. MSJ Reply, Adv. Proc., ECF No. 117. On December 10, 2024, the Bankruptcy Court held a hearing on the Motion for Summary Judgment. *See* Adv. Proc., ECF No. 127. On June 17, 2025, the Bankruptcy Court issued a written decision granting the Trustee's Motion for Summary Judgment in its entirety (the "MSJ Order"). *See* MSJ Order, Adv. Proc., ECF No. 136.

<u>The MSJ Order – Undisputed Facts</u>

In the MSJ Order, the Bankruptcy Court set forth the undisputed facts after first ruling on several evidentiary objections raised by Appellants in their briefing on the Trustee's Motion for Summary Judgment. As discussed below, this Court affirms each such evidentiary ruling. Thus,

the facts herein are derived from the undisputed facts set forth in the MSJ Order.[3] Additionally, it is worth observing that the MSJ Order included 31 separate numbered findings of fact spanning 14 pages, and included painstaking citations to the extensive record evidence presented by the Trustee. While the Court has considered and relied upon all of the undisputed material facts, it does not repeat them herein and simply summarizes the sequence of events as it relates to HDNY and Leading Shine.

*HDNY*

HDNY is a New York LLC. *See* MSJ Order, Statement of Undisputed Facts, at ¶ 2. HDNY has listed as its address 162 E. 64th Street, New York, New York, which has also been used by the Debtor himself, the Debtor's attorney, and various entities affiliated with the Debtor, including several of his adjudged alter egos.[4] *See id.* at ¶ 3. HDNY's sole member is HDH, a Delaware LLC of which Mei Guo is the sole member. *Id.* at ¶ 2. The Debtor's associates, Yvette Wang, Max Krasner, and Daniel Podhaskie, have served as officers of HDNY. *Id.* at ¶ 5. Ms. Wang and Mr. Podhaskie have served as signatories for HDNY, and Ms. Wang and Mr. Krasner also handled HDH's business affairs. *Id.* Ms. Wang, Mr. Krasner, and Mr. Podhaskie referred to the Debtor as the "boss" or the "principal." *Id.*

HDNY was funded by transfers from Saraca Media Group ("Saraca") and ACA Capital Group Limited ("ACA"). *See id.* at ¶¶ 4, 9. ACA has transferred funds to other entities associated with the Debtor, including Golden Spring, Saraca, and Leading Shine, and has also made payments

[3] Appellants did not put forth any additional material undisputed facts in their Local Rule 56(a)2 statement, and nor did they submit any evidence, documentary or otherwise, for the Bankruptcy Court's consideration. *See* MSJ Order at 5.

[4] As of the date of the MSJ Order, the Bankruptcy Court had ruled that the following are the Debtor's alter egos: (1) Golden Spring (New York) Limited ("Golden Spring"); (2) Lamp Capital LLC ("Lamp Capital"); (3) Greenwich Land LLC ("Greenwich Land"); and (4) HK International Funds Investments (U.S.A.) Limited, LLC ("HK USA"). *See* MSJ Order, Statement of Material Facts at ¶ 4.

to companies that managed the yacht and private jet that were beneficially owned by the Debtor. *See id.* at ¶¶ 10–11.

In 2019, with the assistance of Ms. Wang, HDNY and Saraca together funded the purchase of a property located at 373 Taconic Road in Greenwich, Connecticut (the "Taconic Property"), to which Greenwich Land—an adjudged alter ego of the Debtor—was the titleholder. *Id.* at ¶¶ 13–14. HDNY also transferred funds to other entities associated with the Debtor, as well as the Debtor's family members, including: (a) $600,000.00 to the Debtor's wife; (b) $1,000,000.00 to Mei Guo; (c) $16,500,000.00 to Golden Spring; (d) 17,000,000.00 to Lamp Capital; (e) $4,500,000.00 to Greenwich Land; and (f) $350,000.00 to Leading Shine. *Id.* at ¶ 16.

During their respective depositions taken in connection with another adversary proceeding, the Debtor and Mei Guo both asserted their Fifth Amendment rights against self-incrimination, and in doing so, did not dispute that the Debtor owned and controlled HDNY and directed transfers of its money. *See id.* at ¶¶ 17–18.

*Leading Shine*

Leading Shine is a Delaware LLC, formed in 2019 with the assistance of Mr. Krasner and Janover LLC. *Id.* at ¶ 21. Mei Guo was appointed as Leading Shine's president and secretary, and Ms. Wang was appointed as treasurer. *Id.* at ¶ 22.

Leading Shine received funds from numerous sources associated with the Debtor, including: (1) $6,000,000.00 from ACA; (2) $350,000.00 from Golden Spring; (3) $350,000.00 from HDNY; (4) $900,000.00 from Saraca; and (5) $3,000,000.00 from Savio Law LLC (which is linked with the law firm of the Debtor's attorney, Aaron Mitchell). *See id.* at ¶ 24. Leading Shine also transferred funds to several individuals and entities associated with the Debtor, including: (a) $57,000.00 to the Debtor's son; (b) $1,100,000.00 to Gypsy Mei Food Services LLC,

which is held in the name of Mei Guo; (c) $5,413,700.00 to Golden Spring; (d) $625,000.00 to ACA; (e) $450,000.00 to Greenwich Land; and (f) $3,273,879.35 to Lamp Capital. *Id.* at ¶ 25. Leading Shine additionally made numerous transfers to professionals who provided services to the Debtor and his associated entities. *See id.* at ¶ 26.

During a deposition taken in connection with another adversary proceeding, the Debtor asserted his Fifth Amendment rights against self-incrimination, and in doing so, did not dispute his control over Leading Shine. *See id.* at ¶ 28.

The MSJ Order – Evidentiary Rulings

At the outset, the Bankruptcy Court resolved various evidentiary objections asserted by Appellants. First, the Bankruptcy Court resolved Appellants' objection regarding the drawing of an adverse inference from the Debtor's and Mei Guo's invocations of their Fifth Amendment rights against self-incrimination. *See id.* at 7–8. Here, the Bankruptcy Court agreed with Appellants that "an adverse inference on the basis of an invocation of Fifth Amendment rights against self-incrimination is improper at summary judgment" but observed that the invocations were not offered or used for that purpose. As the Bankruptcy Court observed, the invocations, though of "limited relevance" may be "used to show the [] Debtor and Ms. Guo do not dispute the evidence the Trustee has put forward regarding the [] Debtor's domination and control of HDNY and [Leading Shine]." *Id.* (citation omitted). The Bankruptcy Court clarified that the use of such invocations for this purpose "explains what may otherwise seem like a gap in the record, making clear the [] Debtor and Ms. Guo were asked about" their domination and control of HDNY and Leading Shine. *Id.* at 8.

Next, the Bankruptcy Court rejected Appellants' argument that the Bankruptcy Court's prior findings of fact and conclusions of law are inadmissible hearsay and cannot be found to be

"law of the case." *See id.* at 8–9. The Bankruptcy Court, in its discretion, concluded that, to the extent they are not subject to a factual dispute, the Bankruptcy Court's prior determinations in the Debtor's jointly administered Chapter 11 cases and related adversary proceedings constitute law of the case. *Id.* at 9. And as relevant here, Judge Manning found that Appellants had "put forward no factual matter to dispute the established record in these jointly administered Chapter 11 cases and related adversary proceedings." *Id.* The Bankruptcy Court additionally rejected Appellants' arguments that law of the case does not apply because Appellants were not parties to the adversary proceeding(s) from which certain findings of fact and conclusions of law were drawn. *Id.*

Lastly, the Bankruptcy Court overruled Appellants' remaining hearsay objections, underscoring that, provided the Trustee's purported hearsay evidence "will be presented in admissible form at trial, it may be considered at summary judgment."[5] *Id.* at 10 (citation omitted).

<u>The MSJ Order – Merits</u>

Having resolved the foregoing threshold evidentiary issues, the Bankruptcy Court set forth the undisputed facts, and turned to the merits of the Trustee's claims.

The Bankruptcy Court first resolved Appellants' renewed challenge to the Trustee's standing, in which Appellants urged that the Trustee's claims are subject to the doctrine propounded by *Shearson Lehman Hutton Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991), because they can only be brought pursuant to Section 541, standing in the shoes of the Debtor himself, as opposed to his creditors. MSJ Order at 26. Appellants further asserted that the Trustee lacks standing to bring his claims because he is *in pari delicto* with HDNY and Leading Shine. *See id.* On this issue, the Bankruptcy Court concluded that the *Wagoner* doctrine is inapplicable to the Trustee's claims, and that the Second Circuit's recent decision in *Stadtmauer v. Tulis (In re*

[5] Appellants, sensibly, do not appear to contest this determination on appeal.

*Nordlicht)*, 115 F.4th 90 (2d Cir. 2024) does not preclude the Trustee from asserting alter ego claims under Section 544, as general claims of creditors.[6] MSJ Order at 27–29.

Next the Bankruptcy Court evaluated the merits of the Trustee's alter ego and beneficial ownership claims against HDNY and Leading Shine, respectively.

*HDNY*

Turning to the Trustee's alter ego claim against HDNY, as relevant here, the Bankruptcy Court applied New York law and evaluated the factors set forth in *MAG Portfolio Consult, GmbH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001).[7] *See* MSJ Order at 30–31. Specifically, the Bankruptcy Court found that there was no genuine dispute of material fact that: (i) the Debtor controlled the formation of HDNY through his agents, attorney, and blood relatives; (ii) HDNY operated out of an address used by the Debtor himself and several of his adjudged alter egos; (iii) the Debtor managed HDNY through his agents; (iv) HDNY was funded by entities associated with the Debtor (*i.e.*, Saraca and ACA); (v) HDNY was used, in part, to fund the purchase of the Taconic Property, which was beneficially owned by the Debtor though his adjudged alter ego, Greenwich Land; and (vi) HDNY was used to transfer money to the Debtor's family members and adjudged alter egos. *See id.* at 32. On the basis of these undisputed facts, the Bankruptcy Court concluded that all of the *MAG Portfolio* factors support the conclusion that HDNY is an alter ego of the Debtor. *Id.* at 33–34. The Bankruptcy Court further determined that the abuse of HDNY's corporate form hindered, delayed, or defrauded the Debtor's creditors, and that, in particular, by "[s]heltering assets in a corporate entity held by a blood relative from

[6] In light of this finding, the Bankruptcy Court did "not reach the parties' arguments regarding *in pari delicto*." MSJ Order at 30.

[7] The Bankruptcy Court additionally rejected Appellants' arguments that: (a) because alter ego is a remedy under New York law (as opposed to a claim), the Trustee's failure to bring a companion claim is fatal; and (b) the Trustee impermissibly seeks *nunc pro tunc* relief. MSJ Order at 31, 33. Appellants have not meaningfully raised those issues on appeal, and as such, the Court does not address them herein.

collection by his creditors, which assets the [] Debtor continued to control and use, the form of HDNY causes an injustice or inequity." *Id.* at 33.

As to the Trustee's beneficial ownership claim against HDNY, the Bankruptcy Court applied New York law and concluded, in light of the foregoing undisputed facts, that the Debtor: (i) dominated and controlled HDNY and each of its bank accounts to the exclusion of HDNY's nominal indirect owner, Mei Guo; and (ii) benefitted from HDNY and each of its bank accounts as if they were his own. *See id.* at 35 (considering the factors set forth in *In re Dordevic*, 633 B.R. 553, 558 (Bankr. N.D. Ill. 2021)). Thus, the Bankruptcy Court concluded as a matter of law that the Debtor beneficially owned HDNY and its bank accounts. *Id.*

*Leading Shine*

Regarding the Trustee's alter ego claim against Leading Shine, the Bankruptcy Court applied Delaware law and evaluated the factors set forth in *Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 714 (Del. Ch. 2021). *Id.* at 35, 38–39. Specifically, the Bankruptcy Court found that there was no genuine dispute of fact that: (a) the Debtor controlled the formation of Leading Shine through his agents (Ms. Wang and Mr. Krasner) and accountants (Janover LLC), and installed his daughter as its nominal owner; (b) the Debtor controlled and managed Leading Shine through his agents, Ms. Wang and Mr. Krasner; (c) Leading Shine operated out of an address used by the Debtor himself, his attorney, and several of his adjudged alter egos; (d) the Debtor funded Leading Shine through his adjudged alter egos and other associated entities; (e) the Debtor used Leading Shine to transit funds from his adjudged alter egos and associated entities to his family members and other associated entities; (f) the Debtor used Leading Shine to pay professionals for legal and other services; and (g) Mei Guo had difficultly ascertaining whether she legally owned Leading Shine. *See id.* at 38. On the basis of these undisputed facts, the

Bankruptcy Court concluded that the *Manichaean* factors support the conclusion that Leading Shine is the Debtor's alter ego. *Id.* at 33–34. The Bankruptcy Court further determined that the abuse of Leading Shine's corporate form hindered, delayed, or defrauded the Debtor's creditors; that Leading Shine was an instrument in the Debtor's shell game; and that Leading Shine, as a shell company that "merely existed as a conduit for the transfer of funds and the payment of the [] Debtor's own expenses," lacked stakeholders who would be prejudiced by an alter ego determination. *Id.* at 39.

The Bankruptcy Court additionally rejected Appellants' argument that under Delaware law, alter ego only imposes vicarious liability, upon which the Trustee cannot recover. Here, Judge Manning emphasized that the Trustee is seeking turnover of Leading Shine's assets for the Estate, and thus "brings his claims on behalf of the creditors at large to *collect*," regardless of "whether Delaware alter ego law merely imposes vicarious liability." *See id.* at 37–38.

Finally, as to the Trustee's beneficial ownership claim against Leading Shine, the Bankruptcy Court again applied the *Dordevic* factors and found, in light of the foregoing undisputed facts, that the Debtor: (i) dominated and controlled Leading Shine and its bank accounts to the exclusion of Leading Shine's nominal owner, Mei Guo; and (ii) benefitted from Leading Shine and its bank accounts as if they were his own.

In light of the foregoing findings, the Bankruptcy Court granted the Trustee's Motion for Summary Judgment in its entirety, having determined that the Trustee was entitled to judgment as a matter of law on each of his Third, Fourth, Fifth, and Sixth Claims, to wit, that pursuant to Sections 541, 542, and 544: (1) HDNY is an alter ego of the Debtor; (2) the Debtor beneficially owns HDNY and its bank accounts; (3) Leading Shine is an alter ego of the Debtor; and (4) the Debtor beneficially owns Leading Shine and its bank accounts. *See id.* at 41.

**Standard of Review**

This Court has jurisdiction to hear appeals from decisions of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgment, orders, and decrees . . . of bankruptcy judges." *Salim v. VW Credit, Inc.*, 577 B.R. 615, 621 (E.D.N.Y. 2017). "A district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Margulies*, 566 B.R. 318, 328 (S.D.N.Y. 2017) (citation omitted).

A bankruptcy court's grant of summary judgment is reviewed *de novo*. *See Springfield Hospital, Inc. v. Guzman*, 28 F.4th 403, 415 (2d Cir. 2022) (citing *In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001)). A motion for summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009).

"Matters left to the [bankruptcy] court's discretion are reviewed for abuse of discretion." *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006) (internal quotation marks omitted). A district court abuses its discretion when it bases its ruling "on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and internal quotation marks omitted); *see also In re Motors Liquidation Co.*, No. 10-CV-4322 (JGK), 2011 WL 2462773, at *2 (S.D.N.Y. June 20, 2011) ("[a] ruling is an abuse of discretion only if the bankruptcy court bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.") (citations and internal quotations marks omitted). A bankruptcy court's evidentiary rulings are reviewed for abuse of discretion. *Manley v. AmBase*

*Corp.*, 337 F.3d 237, 247 (2d Cir. 2003). "In addition, the Second Circuit has explained, an evidentiary ruling that is an abuse of discretion is, however, only reversible if it also affects a party's substantial rights." *In re Bernard L. Madoff Inv. Sec., LLC*, 605 B.R. 570, 582 (S.D.N.Y. 2019), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 830 F. App'x 669 (2d Cir. 2020) (citing *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 224 (2d Cir. 1999)).

**Discussion**

On appeal, Appellants argue that: (1) the Trustee lacks standing to bring his alter ego and beneficial ownership claims against Appellants; (2) the Bankruptcy Court erred in its threshold evidentiary rulings, to include its determinations regarding the Debtor and Mei Guo's invocations of the Fifth Amendment, as well as the law of the case doctrine; and (3) absent these erroneous evidentiary rulings, the Trustee's "series of innocuous facts" fails to establish his alter ego and/or beneficial ownership claims.[8] *See generally* App. Br., ECF No. 20. In response, the Trustee argues that: (a) he has standing to bring general beneficial ownership and alter ego claims as the representative of the Debtor's creditors; (b) the Bankruptcy Court did not abuse its discretion in considering the Debtor and Mei Guo's invocations of the Fifth Amendment, or in applying the law of the case doctrine; and (c) once Appellants' evidentiary objections are "stripped away," none of

[8] Appellants additionally argue that Delaware alter ego law imposes only vicarious liability upon the alter ego (here, Leading Shine), and "does not transform the property of the alter ego into the property of the debtor." *See* App. Br. at 52. In response, the Trustee contends that "Appellants' argument regarding state law vicarious liability is inconsequential in bankruptcy court, where the assets of an alter ego are treated as property of the estate as a matter of bankruptcy law." Trustee Br. at 53. The Court agrees with the Trustee (and the Bankruptcy Court). Indeed, "[o]nce the nature and extent of debtor's interest in the property is determined [under state law], federal bankruptcy law dictates the extent to which the property is property of the estate." *In re Commodore Bus. Machines, Inc.*, 180 B.R. 72, 78 (Bankr. S.D.N.Y. 1995). In other words, state law does not govern the bankruptcy-related *consequences* of an alter ego ruling duly sought by a bankruptcy trustee in accordance with state law. *See In re Burgess*, 234 B.R. 793, 797 (D. Nev. 1999) ("While state law creates the right, federal law determines whether it is 'property' for purposes of the federal bankruptcy laws, tax laws, etc."); *see, e.g.*, *In re Yerushalmi*, 487 B.R. 98, 108 (Bankr. E.D.N.Y. 2012) (rejecting applicability of a state statute of limitations on a trustee's alter ego claim because "[t]he facts of this case—that is a bankruptcy trustee seeking to recover estate assets on an alter ego theory—are distinguishable from non-bankruptcy alter ego cases pursued by and for the benefit of individual creditors seeking to hold an alter ego liable for the obligations of another").

their remaining merits-based challenges survive scrutiny. *See generally* Trustee Br., ECF No. 26. The Court agrees with the Trustee.

Evidentiary Rulings

As discussed, prior to setting forth the undisputed facts upon which the summary judgment determination was made, the Bankruptcy Court overruled Appellants' objections to the Bankruptcy Court's consideration of the Debtor and Mei Guo's invocations of the Fifth Amendment, as well as its application of the law of the case doctrine. These rulings are reviewed under an abuse of discretion standard, *see Manley*, 337 F.3d at 247, and for the reasons discussed below, the Court finds that the Bankruptcy Court did not abuse its discretion in making either of these threshold determinations.

*Fifth Amendment*

First, Appellants claim that the Bankruptcy Court improperly drew adverse inferences from the Debtor and Ms. Guo's invocations of the Fifth Amendment, and relied on such inferences to make ultimate findings of fact in support of the MSJ Order. *See* Appellant Br. at 25–26. But as this Court concluded in *Greenwich Land, LLC, et al. v. Despins*, No. 3:24-CV-1185 (KAD), 2025 WL 2625264 (D. Conn. Sept. 11, 2025), Appellants' effort to re-write the Bankruptcy Court's decision is not persuasive. The Bankruptcy Court plainly acknowledged that it is improper at summary judgment to draw an adverse inference on the basis of an invocation of the Fifth Amendment right against self-incrimination. *See* MSJ Order at 7–8; *see also Stichting ter Behartiging van de Belangen van Oudaandeelhouders in het Kapitaal van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005). And indeed, when considering the Debtor and Mei Guo's invocations of the Fifth Amendment, Judge Manning explicitly did not draw any such inferences. Rather, she observed that the invocations had "limited relevance," and were relied

upon only for the purpose of establishing that the Debtor and Mei Guo did not dispute the relevant evidence regarding the Debtor's domination and control over HDNY and Leading Shine, and to clarify "what may otherwise seem like a gap in the record." MSJ Order at 7–8. The Bankruptcy Court did not, as Appellants suggest, rely on the invocations as evidence (directly or by inference) that the Debtor controls and/or beneficially owns HDNY or Leading Shine; that the Debtor has control over Ms. Wang, Mr. Krasner, and/or Mr. Podhaskie; or that the Debtor otherwise directed the transfers of funds to/from HDNY and/or Leading Shine in connection with various real estate and other business transactions. As discussed in the MSJ Order, such facts are thoroughly supported by the record evidence, beyond the Debtor and Mei Guo's mere failure to dispute them. As such, the Bankruptcy Court did not abuse its discretion in considering the Debtor and Mei Guo's invocations of the Fifth Amendment for the limited purpose identified in the MSJ Order.

*Law of the Case*

Appellants also challenge the Bankruptcy Court's application of the law of the case doctrine; specifically, Judge Manning's reliance in this case on her previous determinations in other related adversary proceedings that: Golden Spring, Lamp Capital, and Greenwich Land are alter egos of the Debtor; that the Debtor controls Saraca and GTV Media Group, Inc. ("GTV"); and that the Debtor founded and led Rule of Law Foundation III, Inc. ("ROLF"). *See* MSJ Order, Statement of Undisputed Facts at ¶ 4. For principally the same reasons as set forth by the undersigned in *Greenwich Land*, 2025 WL 2625264 at *10, the Court is not persuaded that the Bankruptcy Court abused its discretion in this regard. "Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). As Appellants concede, courts have discretion when deciding whether or not to apply the law of

the case doctrine, which is broadly regarded as "an amorphous concept." *Arizona v. California*, 460 U.S. 605, 618 (1983). Moreover, as relevant here, "courts have held that the law-of-the-case doctrine 'applies to different adversary proceedings filed within the same main bankruptcy case.'" *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018), *aff'd*, 943 F.3d 125 (2d Cir. 2019), and *aff'd*, 792 F. App'x 28 (2d Cir. 2019), and *aff'd*, 957 F.3d 357 (2d Cir. 2020) (citing *In re Moise*, 575 B.R. 191, 205 (Bankr. E.D.N.Y. 2017)); *In re Montagne*, No. 08-1024, 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("Since different adversary proceedings in the same main case do not constitute different 'cases,' it would follow that the law of the case doctrine as articulated in one adversary proceeding would apply in another adversary proceeding filed in the same case.")). Further, Appellants do not dispute, as observed by Judge Manning in the MSJ Order, that they failed to challenge the factual basis for the Bankruptcy Court's prior findings as to Golden Spring, Lamp Capital, Greenwich Land, Saraca, GTV, and ROLF. The Court additionally observes, as did the Bankruptcy Court, that the prior alter ego determination regarding Lamp Capital was made in *this* adversary proceeding, and that Mei Guo was a party to several of the adversary proceedings from which relevant prior rulings were made. For these reasons, the Bankruptcy Court's application of the law of the case doctrine was not an abuse of discretion. *See In re Sims*, 534 F.3d at 132.

<u>Standing</u>

Having affirmed the Bankruptcy Court's threshold evidentiary findings, the Court next turns to the issue of the Trustee's standing. "Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded [both] on the rights of the debtor and on certain rights of the debtor's creditors." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995) (internal quotation marks omitted). "To assert the debtor's rights, trustees generally must invoke section 541 of the

Code – which sweeps all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case into the estate administered by the trustee." *In re Kwok*, 172 F.4th 145, 153 (2d Cir. 2026) (citing *In re Nordlicht*, 115 F.4th at 104) (internal quotation marks omitted). "Trustees may also pursue the 'rights of the debtor's creditors' by turning to other sections of the [Bankruptcy] Code, including [S]ection 544," which "permits the trustee to assert any generalized claims that would belong to a hypothetical high-priority lien creditor."[9] *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989)).

As relevant here, Appellants contend that "[t]he 'strong arm' powers provided by [Section 544] . . . did not confer upon the Trustee the right generally to bring causes of action held by the Debtor's creditors." App. Br. at 10, 18. The Court is not persuaded, and indeed, is bound by the Second Circuit's recent decision in *In re Kwok*, which involved similar reverse veil-piercing claims in connection with the Trustee's effort to secure, among other assets, the Lady May, the Debtor's super yacht nominally held by Mei Guo and HK USA. In *In re Kwok*, the Trustee, as he does here, brought an alter ego claim pursuant to Section 544.[10] Defendants in the underlying adversary proceeding, and again on appeal to the district court as well as the Second Circuit, challenged the Trustee's standing to do so. The Second Circuit rejected the argument. *See generally id.* Although recognizing that "a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, *see Wagoner*, 944 F.2d 114 (2d Cir. 1991), the Court concluded that "[S]ection 544 can coexist with *Wagoner* because [Section 544] does not allow trustees to assert

---

[9] Here, the Trustee pursues claims under both Section 541 and Section 544. Appellants challenge his standing under either Section. But as the Second Circuit concluded in *In re Kwok*, this Court "need not reach the issue of the Trustee's standing under [S]ection 541 because we conclude that the Trustee may assert the claims at issue here under [S]ection 544." 172 F.4th at 153 n.3.

[10] Appellants do not appear to challenge that New York and Delaware recognize reverse veil-piercing claims, as well as beneficial ownership. *See In re Kwok*, 172 F.4th at 153–54 ("To evaluate [Section 544] claims, [courts] must determine whether 'state law would allow . . . a supposed or hypothetical creditor of the debtor' to bring them.") (quoting *In re Vienna Park Props.*, 976 F.2d 106, 115 (2d Cir. 1992)).

just *any* creditor claim." *In re Kwok*, 172 F.4th at 154. "Put simply, the *Wagoner* rule bars trustees from asserting personal-creditor claims, while [S]ection 544 allows them to pursue general causes of action that would benefit any hypothetical creditor." *Id.* at 155. The Second Circuit additionally concluded that "trustees may assert generalized alter-ego claims either under [S]ection 544 or – if those claims also belong to the estate itself – under [S]ection 541," *id.* (citing *St. Paul Fire*, 884 F.2d at 700, 704, and that *this* Trustee's "reverse veil-piercing claims are general," insofar as "[s]uch claims increase the basket of assets that could be used to satisfy any and all liabilities owed by the debtor," and "enlarge the size of the bankruptcy estate for all creditors," *In re Kwok*, 172 F.4th at 155–56 (citing *In re Nordlicht*, 115 F.4th at 104). So too here. Because a hypothetical creditor could bring the same generalized claims against HDNY and Leading Shine, the Trustee may also do so under Section 544. *See In re Kwok*, 172 F.4th at 156. Accordingly, and in light of *In re Kwok*, the Bankruptcy Court's conclusion that the Trustee had standing to assert his claims against HDNY and Leading Shine is **AFFIRMED**.

Issues of Fact

Lastly, Appellants additionally purport to have identified numerous genuine issues of material fact that prelude the Bankruptcy Court's alter ego and beneficial ownership determinations as to HDNY and Leading Shine. *See* App. Br. at 35–48. In doing so, Appellants repeatedly urge that the Bankruptcy Court's summary judgment decision was premised on its "erroneously determined 'undisputed facts,'"—in particular, its improper reliance on law of the case—and that, "[a]ppropriately excluding such evidence, what remains is a series of innocuous facts that fail to establish, without genuine issue, the Trustee's alter ego or beneficial ownership causes of action." *Id.* at 35. Indeed, Appellants insist that "[p]roper consideration of the evidence

presented makes clear that genuine issues of material fact precluded summary judgment." *Id.* Not so.

First, this Court has already affirmed the Bankruptcy Court's construction of the undisputed facts, to include its application of law of the case, and has otherwise rejected Appellants' contentions regarding state law vicarious liability. Stripping away those arguments, Appellants are, at best, left with only their conclusory (and unsupported) assertions that: "[t]here is no evidence the [Debtor] had any direct involvement in the formation of HDNY"; "[t]here is simply no direct evidence that the Debtor exercised complete dominion and control over HDNY and [HDH]"; "[t]here is no direct evidence that Ms. Wang, Mr. Krasner or Janover [LLC] acted on behalf of [the Debtor]"; and that the Bankruptcy Court reached its conclusions "by viewing the evidence in the light least favorable to the Appellants and drawing far-reaching negative inferences against them." *Id.* at 38–39, 41, 44. In support of those assertions, Appellants, *inter alia*: (a) urge that "sharing an office with other individuals and entities . . . does not establish domination and control by any one individual"; (b) downplay the significance of Appellants' receipt of funds from the Debtor's associated entities, as well as the references to the Debtor as the "principal" and "boss"; and (c) emphasize that "Ms. Wang was, in fact, [Leading Shine's] Treasurer." Yet, such factual oddments are offered in a vacuum and are conveniently bereft of any broader context. Indeed, Appellants largely ignore the wealth of other record evidence that, as set forth by the Bankruptcy Court in painstaking detail, demonstrates the Debtor's domination and control over HDNY and Leading Shine. And it bears repeating that Appellants offered no evidence of their own in opposition to the Motion for Summary Judgment, nor any competing narrative in response

to the Trustee's statement of undisputed material facts.[11] In short, Appellants do not meaningfully challenge Judge Manning's factual findings or conclusions of law based thereupon. And, with little hesitation, the Court agrees with the Bankruptcy Court's assessment of the record evidence.[12]

**Conclusion**

For all of the foregoing reasons, the Court **AFFIRMS** the order of the Bankruptcy Court granting summary judgment in favor of the Trustee on his Third, Fourth, Fifth, and Sixth Claims. Accordingly, the Clerk of Court is directed to enter judgment in favor of the Trustee and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of August 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

[11] And it certainly was not Judge Manning's obligation to "raise and make [Appellants'] arguments for them." *Moore v. Peters*, 92 F. Supp. 3d 109, 126 (W.D.N.Y. 2015); *see also Beare v. Millington*, No. 07-CV-3391 (TLM), 2014 WL 1236750, at *2 (E.D.N.Y. Mar. 25, 2014), *aff'd sub nom. Harris v. Millington*, 613 F. App'x 56 (2d Cir. 2015) ("It was the plaintiff's duty to set forth evidence showing issues of disputed material fact in opposition to defendant's thoroughly argued and supported motion for summary judgment and the Court will not step in to advocate for plaintiff."); *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("[Rule 56] does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."); *Bonnie & Co. Fashions v. Bankers Tr. Co.*, 945 F. Supp. 693, 726 (S.D.N.Y. 1996) ("It is not the job of this, or any other, court to construct arguments or to ferret out evidentiary support on behalf of a party.")

[12] Notably, Appellants do not challenge the application of New York and Delaware law to the Trustee's claims.